UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FREDERICK DIAZ,

                              Plaintiff,

    -vs-                                **No. 6:10-CV-6595(MAT)**
                                                      **DECISION AND ORDER**

ROBERT BURNS, Correction Officer;
JOHN F. MORAN, Correction Officer;
FREDERICK W. KINTZEL, Sergeant; T.
ZERNIAK, Lieutenant; ROBERT A.
KIRKPATRICK, Superintendent; NORMAN
R. BEZIO, Director, Special
Housing; BRIAN FISCHER,
Commissioner, NYSDOCS,

                                Defendants.

---

**I.    Introduction**

Proceeding pro se, plaintiff Frederick Diaz ("Plaintiff" or "Diaz"), an inmate in custody of the New York State Department of Corrections and Community ("DOCCS"), instituted the present action pursuant to 42 U.S.C. § 1983 against defendants, who are employees of DOCCS. Defendants have filed a motion to dismiss (Dkt #10) the complaint, which Plaintiff has opposed (Dkt #14).

On February 8, 2013, Thomas D. Terrizzi, Esq. filed a Notice of Appearance (Dkt #16) in this matter, but he has not filed any pleadings in opposition to Defendants' Motion to Dismiss.

This matter was transferred to the undersigned on October 30, 2013 (Dkt #17).

**II.    Factual Background**

On September 14, 2007, Plaintiff was transferred to Wende Correctional Facility ("Wende"). See Complaint ("Compl."), ¶ 17.

While at Wende, Plaintiff experienced numerous problems, about which he complained via letters to Commissioner Fischer and grievances to Superintendent Kirkpatrick. Id., ¶¶ 24-25.

On April 7, 2008, Plaintiff was involved in a use of force ("UOF") incident with Correction Officer ("CO") Burns, CO Moran and Sergeant ("Sgt.") Kintzel. Id., ¶¶ 30-35. As a result of the UOF incident, Plaintiff was charged in a misbehavior report with assaulting staff, engaging in violent conduct, interfering with an employee, and disturbing the order of the facility. A tier III disciplinary hearing was held, after which Plaintiff was found guilty of all charges. Id., ¶ 43. The adverse finding was administratively reversed by Director of Special Housing ("DSH") Bezio, who ordered a new hearing. Id., ¶¶ 45, 58, 59.

The re-hearing was conducted by Lieutenant ("Lt.") Zerniak, who found Plaintiff guilty of all charges. DSH Bezio upheld Lt. Zerniak's finding, and Plaintiff instituted a proceeding pursuant to Article 78 of New York's Civil Practice Law and Rules. Compl., ¶¶ 62, 72, 75.

The Appellate Division, Third Department, of New York State Supreme Court ("the Third Department") found that Plaintiff had been denied both his statutory and constitutional right to call witnesses. In particular, the Third Department noted, Plaintiff attempted to call, among others, an investigator from the Inspector General's office and a psychologist who examined Plaintiff shortly

after the incident. Plaintiff's defense at both hearings was that, contrary to the accusation that he assaulted the correction officer without provocation, he actually was attacked by the officer in retaliation for his work with the grievance office. Diaz v. Fischer, 70 A.D.3d 1082, 1082, 894 N.Y.S.2d 218 (3d Dep't 2010). At the hearing, Plaintiff explained that the investigator commenced an investigation of the incident shortly after it occurred and, in addition to questioning those witnesses who testified at the first hearing, was planning to interview inmate witnesses who had refused to testify due to fear of retaliation. Id. at 1083. However, the hearing officer (Lt. Zernkiak) denied the investigator as a witness because he was "not in the area of the alleged incident." Id. As the Third Department noted, "investigators from the Inspector General's office routinely testify in prison disciplinary hearings, as do other witnesses who have gained information through investigation, rather than personal observation[.]" Id. n.1 (internal and other citations omitted).

With regard to the psychologist whom Plaintiff attempted to call as a witness, Lt. Zerniak denied the request, notwithstanding the fact DSH Bezio had administratively reversed the first hearing because "the record failed to indicate how [Plaintiff]'s mental health status was considered." Diaz, 70 A.D.3d at 1083.

The Third Department found that "[i]nasmuch as these witnesses may have provided testimony that was material, their absence

substantially prejudiced [Plaintiff]'s ability to present his defense . . . ." Id. (citations omitted). Because the "the deprivation constituted a violation of [Plaintiff]'s constitutional right to call witnesses, rather than merely his statutory right," the appropriate remedy was expungement. Id. (citations omitted). Accordingly, the Third Department annulled the disciplinary determination and directed DOCCS to expunge all references to the matter from Plaintiff's institutional record. Id.

Plaintiff's first claim in this lawsuit, "Violation of Equal Protection", alleges that Commissioner Fischer and Superintendent Kirkpatrick are liable for all of the problems he has experienced at Wende. Plaintiff asserts a "class of one" theory, alleging that the was subjected to retaliation and discrimination based solely on his hisotry of filing grievances and complaints against DOCCS' staff. Compl., ¶ 26.

In support of his second claim, "Assault" (based on the UOF involving CO Burns, CO Moran, and Sgt. Kintzel), he alleges that Superintendent Kirkpatrick is liable for "negligent supervision and shoddy investigations" into the UOF incident. Id., ¶ 41. Plaintiff also includes allegations that CO Burns, CO Moran, and Sgt. Kintzel attacked him "maliciously and sadistically for the very purpose of causing harm" and "in order to have Plaintiff removed from the Grievance Office. . . ." Id., ¶ 32. Plaintiff asserts that the as a result of being "sucker-punched" by CO Burns in his right eye

area and on other parts of his body, he "suffered a large contusion and swelling of his right eye, numerous abrasions throughout his body, and severe neck and head pain[,]" with resultant vision problems and headaches. Id., ¶ 37.

Plaintiff's third claim, "Filing of False Misbehavior Report and Denial of Due Process", names CO Burns, CO Moran, and Sgt. Kintzel. Plaintiff accuses them of filing a false misbehavior report concerning the UOF incident. Id., ¶ 43. Plaintiff also implicates Lt. Zerniak for finding him guilty at the second administrative hearing and DSH Bezio for failing to administratively reverse the second hearing. Id., ¶ 76.

Defendants have moved to dismiss the first claim based upon a violation of the equal protection clause. In addition, Defendants have moved to dismiss all claims against Commissioner Fischer and Superintendent Kirkpatrick on the basis that there is insufficient personal involvement by these individuals. Defendants have also moved to dismiss the claim based on the filing of a false misbehavior report on the ground that it fails to state a constitutional claim.

Defendants have not moved against the allegations that CO Burns and CO Moran utilized excessive force in violation of the Eighth Amendment and that Sgt. Kintzel failed to protect Plaintiff from the attack by CO Burns and CO Moran in violation of the Eighth Amendment. Likewise, Defendants have not moved against the

allegations that Lt. Zerniak denied Plaintiff's constitutional rights at the second disciplinary hearing, and that DSH Bezio failed to remedy on appeal the constitutional errors committed by Lt. Zerniak.

Finally, Defendants have included in their memorandum of law some case law regarding qualified immunity, but they have not made any actual argument that they are entitled to qualified immunity.

For the reasons discussed below, Defendants' partial motion to dismiss is granted.

**III. General Legal Principles**

**A. Motions to Dismiss for Failure to State a Claim**

Rule 12(b)(6) allows dismissal of complaints based upon the plaintiff's failure "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In order "[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing a claim's plausibility, the district court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, Iqbal, 556 U.S. at 679, and draw every reasonable inference in favor of the plaintiff, Zinermon v. Burch, 494 U.S. 113, 118 (1990). However, the plaintiff's allegations must consist of more than mere labels or a "formulaic

recitation of the elements of a cause of action," Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555), and bare legal conclusions are "not entitled to the assumption of truth." Id. at 679.

**B. Construction of Pro Se Pleadings**

The Supreme Court has noted that "[a] document filed pro se is to be liberally construed,' and must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v.Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007). Because Plaintiff is acting pro se, the Court will construe his submissions liberally, "to raise the strongest arguments they suggest." Bertin, 478 F.3d at 489.

**IV. Discussion**

**A. Violation of the Equal Protection Clause**

The Equal Protection Clause of the Fourteenth Amendment ensures that similarly situated persons are treated alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). This right to be protected from "invidious discrimination" extends to incarcerated persons. Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Lee v. Washington, 390 U.S. 333 (1968)). The guarantee of the Equal Protection Clause safeguards not only groups of individuals, but also individuals who constitute a "class of one." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)

(per curiam) ("Olech"). In Olech, the Supreme Court held that where the plaintiff is not a member of a suspect or protected class, he still may assert an equal protection claim is based on a "class of one" theory, which requires the plaintiff to show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. at 564. Here, Diaz claims that he is a "class of one" because he was "singled out for retaliation/discrimination for no reason except for his history of filing grievances/complaints, his lawsuit against Attica, and for having an assault on staff report reversed, and thus [he] was uniquely situated compared to other inmates at Wende." Compl., ¶ 26.

Plaintiff has not come close to sufficiently alleging facts that could be used to infer an allegation that similarly situated prisoners were treated more favorably than he was. Plaintiff fails to allege the existence of similarly situated individuals or that he was treated differently from those individuals. Basically, he is alleging that every other inmate at Wende was treated more favorably than he. Plaintiff has not adequately identified, beyond a speculative level, other individuals with whom he can be compared for equal protection purposes. Cf. Garcia v. Smith, Civil No. 10cv01187 AJB(RBB), 2011 WL 7500435, at *8-9 (S.D. Cal. Dec. 13, 2011) (finding that plaintiff-inmate, who alleged a "class of one" equal protection claim and asserted disparate treatment

based on his propensity for grievance-filing, "adequately identified, beyond a speculative level, other individuals with whom he [could] be compared", where he identified approximately ten specific inmates, similarly situated to him, who received more favorable treatment). Accordingly, the Court finds that Diaz has failed to state a claim for relief under the Equal Protection Clause. The First Claim is dismissed with prejudice.

   **B.  Second Claim: "Retaliatory Assault by Staff Due to Plaintiff Having Been Elected as an Inmate Grievance Representative"**

The "retaliatory assault" to which Plaintiff refers is the April 7, 2008 UOF in which he claims he was assaulted by CO Moran and CO Burns, and that Sgt. Kintzel failed to interrupt the attack while it was occurring. Plaintiff alleges that Superintendent Kirkpatrick is liable for the April 7, 2008 UOF based on his "negligent supervision [of the officers involved in the UOF] . . . ." Compl., ¶ 41. Plaintiff makes similar allegations against Commissioner Fischer. E.g., id., ¶ 25. Defendants have moved to dismiss the claims against the supervisory defendants based on lack of personal involvement, but it does not appear that they have moved to dismiss this claim on behalf of CO Burns, CO Moran, and Sgt. Kintzel.

Damages under 42 U.S.C. § 1983 are appropriate only if a defendant was personally involved in the alleged constitutional violation. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)

(citation and internal quotation marks omitted). In general, the plaintiff must demonstrate that there is a "tangible connection between the alleged unlawful conduct and the defendant." Balkum v. Sawyer, No. 6:06-cv-1467, 2011 WL 5041206, at *4 (N.D.N.Y. Oct.21, 2011) (citing Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)). Where, as here, the defendants are supervisory officials, the doctrine of respondeat superior is inadequate to establish the requisite personal involvement. Polk County v. Dodson, 454 U.S. 312, 325 (1981); see also Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003).

Five categories of personal involvement were articulated by the Second Circuit in Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995), which stated that personal involvement may be based on allegations that "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that

unconstitutional acts were occurring." Id. (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).[1]

As an initial matter, the allegations in the Complaint do not indicate that Superintendent Kirkpatrick or Commissioner Fischer were directly involved in the constitutional violations.

Diaz's allegation that Commissioner Fischer and Superintendent Kirkpatrick were "negligent" is insufficient to state the required degree of personal involvement under th. Bass, 790 F.2d at 262 (citing Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 663 (1986)); see also Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir. 1985) ("An isolated omission to act by a state prison guard does not support a claim under section 1983 absent circumstances indicating an evil intent, or recklessness, or at least deliberate indifference to the consequences of his conduct for those under his control and dependent upon him.") (quotation omitted).

Plaintiff also appears to seek to confer liability under the second, third, and/or fifth Colon categories of liability. In particular, Plaintiff asserts that "[d]espite his detailed grievances[,] which continued to put defendant Kirkpatrick on notice that Plaintiff's safety was at risk, Kirkpatrick did nothing

---

[1] District courts in this Circuit are divided as which of the Colon "species" of personal involvement have survived the Supreme Court's decisions in Iqbal, 556 U.S., supra, and Twombly, 550 U.S. , supra. Contrast Plunkett v. City of N.Y., No. 10-CV-6778 (CM), 2011 WL 4000985 (S.D.N.Y. Sept. 2, 2011), with Bellamy v. Mount Vernon Hosp., 07-CV-1801 (SAS), 2009 WL 1835939 (S.D.N.Y. June 26, 2009). The Court need not enter the debate at this time since Plaintiff's allegations do not suffice under any of the five Colon categories.

to end any of the retaliation Plaintiff was being subjected to." Id., ¶ 24. He alleges that Superintendent Kirkpatrick's removal of Plaintiff from his position as a Grievance Clerk constituted a "clear message to the staff that they were free to retaliate against Plaintiff" and "subsequently led to Plaintiff being assaulted by the staff after Plaintiff was elected as an Inmate Grievance Representative. . . ." Id. These allegations are far too vague and speculative to state the requisite level of personal involvement in the UOF by Superintendent Kirkpatrick. Essentially Plaintiff is asking the Court to hold that the filing of grievances is sufficient to put a supervisory official on notice that the grievant will be subjected to unconstitutional conduct at the hands of his or her staff members.

The Court agrees with Defendants that Plaintiff has not sufficiently alleged personal involvement by Commissioner Fischer and Superintendent Kirkpatrick in any of the asserted constitutional violations. Accordingly, the Second Claim, as against Commissioner Fischer and Superintendent Kirkpatrick, is dismissed with prejudice, and these two defendants are terminated from this lawsuit.

**C. Third Claim: "Filing of False Misbehavior Report and Denial of Due Process"**

**1. Filing of a False Misbehavior Report**

The Second Circuit has held that "a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly

accused of conduct which may result in the deprivation of a protected liberty interest," Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), cert. denied, 485 U.S. 982 (1988). Rather, an inmate's constitutional right to due process requires that, before prison officials mete out discipline based on a misbehavior report, they must conduct a proper hearing. "In other words, the failure to conduct a constitutionally adequate disciplinary hearing may give rise to a Section 1983 action, but the mere filing of a false misbehavior report against an inmate does not." Greaves v. State of N.Y., 958 F. Supp. 142, 144 (S.D.N.Y. 1997) (citing Williams v. Smith, 781 F.2d 319, 324 (2d Cir. 1986) ("The filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing.") (citing Sommer v. Dixon, 709 F.2d 173, 174-75 (2d Cir.), cert. denied, 464 U.S. 857 (1983)).

Accordingly, the Third Claim, to the extent that is based on the mere filing of the allegedly false misbehavior report, is dismissed against CO Burns, CO Moran, and Sgt. Kintzel, is dismissed for failure to state a claim.

### 2. Denial of Due Process at Disciplinary Hearings

Plaintiff alleges that he was denied due process by an individual whom he identifies only as "Hearing Officer" in the Complaint. See Compl., pp. 8-11. He alleges that Lt. Zerniak, who conducted the re-hearing conducted regarding the April 7, 2008

misbehavior report, also committed constitutional violations. Plaintiff asserts that DSH Bezio is liable for affirming Lt. Zerniak's adverse disciplinary ruling on administrative appeal. Defendants have not moved to dismiss the due process claims asserted under the "Third Claim" heading in the Complaint.

### 3. The Unnamed "Hearing Officer"

In his Complaint, Plaintiff mentions an unnamed defendant, "Hearing Officer", in the section setting forth the allegations in support of his Third Claim. However, he does not list the unnamed Hearing Officer under the section setting forth the Parties to this action. It is therefore unclear whether Plaintiff intends to pursue recovery against the Hearing Officer who conducted the initial disciplinary hearing based upon the April 7, 2008 misbehavior report.

In addition to not being identified, this individual, to date, has not been personally served with process. F.R.C.P. 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m). If Plaintiff wishes to include this Hearing Officer in the instant lawsuit, he must effectuate service against him within thirty (30) days of the date of this Decision and Order.

**IV. Conclusion**

For all the foregoing reasons, Defendant's motion to dismiss (Dkt #10) is granted, and the following claims are dismissed with prejudice: (1) the First Claim, which alleges a violation of the Equal Protection Clause, in its entirety; (2) the Second Claim, to the extent that it alleges failure to protect/failure to supervise by Commissioner Fischer and Superintendent Kirkpatrick in connection with the April 7, 2008 assault; and (3) the Third Claim, to the extent it alleges constitutional injury based upon the filing of a false misbehavior report by CO Burns, CO Moran, and Sgt. Kintzel.

Defendants have not moved against the following claims, which may proceed at this time: (1) the Second Claim, which asserts claims of retaliation under the First Amendment and an excessive use of force under the Eighth Amendment, and which seeks to hold CO Burns and CO Moran directly liable for the April 7, 2008 assault; (2) the Second Claim, which alleges that Sgt. Kintzel failed to intervene to stop the retaliatory assault by his subordinates, CO Burns and CO Moran, on April 7, 2008; (3) the Third Claim, to the extent it alleges that Lt. Zerniak committed due process violations at the re-hearing and that DSH Bezio failed to remedy these errors on administrative appeal.

The following defendants are terminated with prejudice from this action based upon the lack of sufficient personal involvement: Superintendent Kirkpatrick and Commissioner Fischer.

The following Defendants remain in this action: CO Burns, CO Moran, Sgt. Kintzel, Lt. Zerniak, and DSH Bezio. These Defendants are directed to file a responsive pleading to the Complaint, in the form of an Answer, a Motion to Dismiss pursuant to F.R.C.P. 12(b)(6), or a Motion for Judgment on the Pleadings pursuant to F.R.C.P. 12(c) within thirty (30) days of the date of this Decision and Order.

If Plaintiff wishes to include the unnamed Hearing Officer in the instant lawsuit, he must effectuate service against this individual within thirty (30) days of the date of this Decision and Order. If Plaintiff does not effectuate service within the required time, the unnamed Hearing Officer will be terminated from this lawsuit. If Plaintiff does serve the unnamed Hearing Officer with the Complaint, this individual will have thirty (30) days from the date of service in which to file a responsive pleading, in the form of an Answer, a Motion to Dismiss pursuant to F.R.C.P. 12(b)(6), or a Motion for Judgment on the Pleadings pursuant to F.R.C.P. 12(c).

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   November 6, 2013
         Rochester, New York